ORIGINAL



FILED

OCT 2 8 2015

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

1  ARASH SHIRDEL (SBN 247754)
2  PACIFIC PREMIER LAW GROUP
   200 E. Sandpointe Ave, Ste 500
3  Santa Ana, CA 92707
   949-629-3690
4  949-313-0995 – Facsimile
   Ashirdel@pacificpremierlaw.com
5

6  Attorney for: Richard Marshack, Chapter 7 Trustee to the estate of Tara Jakubaitis

7

8              UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11 IN RE:                                  ) Case No: 8:13-bk-20028-TA
                                           )
12 TARA JAKUBAITIS                         ) Case No: 8:15-ap-
                                           )
13     Debtor                              ) Chapter 7
                                           )
14 _____        )
                                           ) Assigned for all Purposes To:
15 RICHARD MARSHACK, Chapter 7 Trustee to ) Honorable : Theodor Albert
   the estate of Tara Jakubaitis          )
16                                         )
        Plaintiff,                         ) ADVERSARY COMPLAINT FOR
17                                         ) 1.   TURNOVER OF PROPERTY OF
                                           )      THE ESTATE - 11 USC §542;
18     v.                                  ) 2.   AVOIDANCE OF FRAUDULENT
                                           )      TRANSFER - 11 USC §544;
19 TARA JAKUBAITIS, an individual, FRANK   ) 3.   REVOCATION OF DISCHARGE - 11
   JAKUBAITIS, an individual, and DOES 1-10 )     USC §727(d)
20                                         )
21     Defendants,                         )
                                           )
22 _____        )
                                           )
23

24     Plaintiff, Richard Marshack bring this action against Chapter 7 Debtor, Tara Jakubaitis, (a) to

25 compel the turnover, pursuant to 11 USC §542, of property of the Debtor's bankruptcy estates that the

26 Debtors have either disguised or failed to disclose on her schedules; (b) avoid certain fraudulent

27 transfers from by Tara Jakubaitis to certain third parties; (c) to revoke Debtor's discharge obtained

28 through violation of 11 USC §727(a)(2) and (a)(3); and, (d) to prove that Debtor made a false oath and

_____
*Adversary Complaint*                                                        -1-

false claims in violation of 11 USC §727(a)(4).  In support of this adversary complaint, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction to hear this matter pursuant to 28 USC §§157 and 1334, and 11 USC §§523 and 727.  This is an adversary proceeding pursuant to the Federal Rules of Bankruptcy Procedure 7001(1), (4), and (9) and a core proceeding pursuant to 28 USC §157(b)(2), (A), (E), and (J).

2.    Venue is proper in this district pursuant to 28 USC §1409(a).

## PARTIES

3.    Plaintiff Richard Marshack is the Chapter 7 Trustee appointed to the Chapter 7 Bankruptcy matter of Tara Jakubaitis.

4.    Tara Jakubaitis is and at all pertinent times has been an individual residing in the County of Orange, California.  Tara Jakubaitis is a Chapter 7 Debtor in the matter of *In re: Tara Jakubaitis* filed her petition on December 17, 2013 (Case No. 8:13-20028).  On August 17, 2014, the Court entered Tara Jakubaitis's discharge.

5.    Frank Jakubaitis is and, at all pertinent times has been an individual residing in the County of Orange, California.  Frank Jakubaitis is and, at all pertinent times has been the husband of Tara Jakubaitis.  Frank Jakubaitis is also Chapter 7 debtor in the matter of *In re: Frank Jakubaitis* filed on January 9, 2013 (Case No.: 8:13-bk-10223).

6.    Various others, presently unknown to the Plaintiff, participated as co-conspirators with Defendants in the violations of law alleged in this Complaint and have engaged in conduct and made statements in furtherance thereof.  DOES 1-5 are individuals, and participated in the activity which is the subject of this action, as alleged in this Complaint.  DOES 6-10 are business entities of unknown form that participated in the activity which is the subject of this action.  Plaintiff does not know the true names and capacities of the Defendants named in this action as DOES 1-10, and therefore sues them under these fictitious names.  Plaintiff will request permission to amend this Complaint to state the true names and capacities of these fictitiously named defendants when he ascertains them.  Plaintiff is informed and believes, and alleges on this ground, that these fictitiously named defendants are

1   legally responsible in some manner for the acts and omissions set forth below, and therefore are liable

2   to them for the relief requested.

3                                    **GENERAL ALLEGATIONS**

4       7.      Frank Jakubaitis has been declared a fraudster by the Orange County Superior Court as

5   well as the United States Bankruptcy Court.  Frank and Tara Jakubaitis have a history of defrauding

6   the public for their own personal gain, without regard for the individuals they were defrauding.

7       8.      In or about 2008, Frank and Tara Jakubaitis started a company, WeCosign, Inc. to

8   provide surety services to individuals with imperfect credit.  Soon thereafter, Frank and Tara Jakubaitis

9   started their campaign of fraud.  Shortly after creating WeCosign, Inc., Frank and Tara Jakubaitis

10  began "selling" shares in WeCosign, Inc. to unsuspecting victims.

11      9.      On or about July 14, 2009, Frank and Tara Jakubaitis filed United States Securities and

12  Exchange Commission Form S-1, to make WeCosign, Inc. a publicly traded company.  Being a

13  publicly traded company gave WeCosign, Inc. (trading symbol WECS) legitimacy and gave Frank and

14  Tara Jakubaitis further ammunition to continue to defraud creditors.

15      10.     After becoming a publicly traded company, Frank and Tara Jakubaitis really began their

16  fraud on the public.  Frank and Tara Jakubaitis would sell their shares "under the table" without

17  reporting the same to either WeCosign, Inc.'s transfer agent or the SEC.  Frank and Tara Jakubaitis

18  continued to claim that the shares they were selling were for the benefit of WeCosign, Inc.; however,

19  the truth is that Frank and Tara Jakubaitis used WeCosign, Inc. as a guise for their own personal

20  benefit. All the while, Frank and Tara Jakubaitis would inform their victims that their "shares" in

21  WeCosign, Inc. was being held in "book entry" form at the offices of WeCosign, Inc.  Frank and Tara

22  Jakubaitis never provided any shareholder of WeCosign, Inc. with any stock certificates.

23      11.     Frank and Tara Jakubaitis continued to sell shares in WeCosign, Inc., but in lieu of

24  raising money for WeCosign, Inc. as they continued to proclaim to customers, Frank and Tara

25  Jakubaitis would instead sell their own personal shares, in violation of various SEC rules.

26      12.     Frank and Tara Jakubaitis would tell their investors that their shares were held in "book

27  entry" form at the offices of WeCosign, Inc.  Frank and Tara Jakubaitis would not report any of the

28  sales of their securities to their transfer agent; and, Frank and Tara Jakubaitis would never deliver

*Adversary Complaint*                                                              -3-

1    actual stock certificates to any of their customers.  With unfettered control and no oversight, on who

2    owned what number of shares in WeCosign, Inc., Frank and Tara Jakubaitis were able to sell and resell

3    the same shares to multiple individuals, retain control over WeCosign, Inc. and continue to collect their

4    ill-gotten gains.

5        13.    Throughout the time of their control of WeCosign, Inc., Frank and Tara Jakubaitis

6    would appear to be living a very meager existence and Frank and Tara Jakubaitis repeatedly claimed to

7    various investors that they did not take a "salary" from WeCosign, Inc. and were investing the same

8    back into the company.  However, in reality, Frank and Tara Jakubaitis continued to sell and resell

9    their shares in WeCosign, Inc. to the detriment of investors.  In fact in a 6 month period from April

10   2010 through October 2010, Frank and Tara Jakubaitis received in excess of **$640,000.00** from the sale

11   of their shares.

12       14.    Furthermore, Frank and Tara Jakubaitis would continue to use WeCosign, Inc. as their

13   personal "piggy bank" by paying for such expenses as: personal gasoline and vehicle expenses,

14   dinners, personal rent, Disneyland annual passes, veterinary bills, and other such personal expenses

15   directly from the WeCosign, Inc. account.  So while seeming "altruistic" by not taking a "salary,"

16   Frank and Tara Jakubaitis were pilfering money from WeCosign, Inc.'s coffers.

17       15.    Frank and Tara Jakubaitis continued to sell and resell their "shares" in WeCosign, Inc.

18   to unsuspecting investors, to the tune of between $1,000,000.00 and $2,000,000.00.  However, Frank

19   and Tara Jakubaitis never actually sold any of their shares, but instead kept all shares in their own

20   name and continued to use WeCosign, Inc. as a shell for their personal benefit.  Frank and Tara

21   Jakubaitis would then improperly and without consideration, transfer cash from the "sale" of stock to

22   third parties, including other corporations they controlled, i.e. Tara Pacific, Inc. in order to hide the

23   same from potential creditors.  In the six month period from April 2010 through October 2010, Frank

24   and Tara Jakubaitis received in excess of **$640,000.00** from the sale of their stock and transferred in

25   excess of **$600,000.00** to Tara Pacific, Inc. a corporation that Tara Jakubaitis controlled (Tara Pacific,

26   Inc. had no officers, no directors, no shareholders, but only had bank accounts, whose sole signer was

27   Tara Jakubaitis), for no consideration.  In fact Frank Jakubaitis admitted in his 341(a) meeting of the

28   creditors that the money was "his money" and he "do with it as [he] pleased."

16.     Anytime an investor demanded their stock, Frank and Tara Jakubaitis would vilify them to other investors, claiming the investor's demand for their stock was an attempt to destroy WeCosign, Inc.  Furthermore, Frank and Tara Jakubaitis would make outrageous claims like the investor was a competitor, or was demonstrating "just sour grapes."  If any investor continued to demand their shares despite the ridicule they received at the hands of Frank and Tara Jakubaitis, Frank and Tara Jakubaitis would simply file a lawsuit against the same alleging violations including but not limited to violations of "RICO" or other similar claims in an attempt to terrorize and scare the individual from continuing to pursue their claims.  This method usually worked, and the investors would usually walk away from their investments, as opposed to attempt to litigate against Frank and Tara Jakubaitis.

17.     Upon investor's repeated demands for their stock, Frank and Tara Jakubaitis decided to "deregister" WeCosign, Inc. from the SEC, at which point there would be no market for the investors' WeCosign, Inc. stock.  Without a market for WeCosign, Inc. stock, the investors' shares would be virtually worthless.

18.     On or about December 30, 2012, Frank and Tara Jakubaitis filed a form 15-D and WeCosign, Inc. became a deregistered company with the SEC.

19.     However, deregistering WeCosign, Inc. was not the only tactic to skirt those who had invested in them and in WeCosign, Inc.

20.     On or about February 25, 2011, Frank and Tara Jakubaitis registered WeCosign Services, Inc., a California corporation.  WeCosign Services, Inc. remained a shell company until WeCosign, Inc. had lost its benefit, at which point Frank and Tara Jakubaitis jettisoned WeCosign, Inc. in favor of WeCosign Services, Inc.  Frank and Tara Jakubaitis started doing business as usual as WeCosign Services, Inc. (as opposed to WeCosign, Inc.) without all of the liabilities associated with the WeCosign, Inc. name, i.e. investors' liabilities, debts, etc….

21.     Once WeCosign Services, Inc. had become the current flavor, Frank and Tara Jakubaitis started to use it as a piggy bank, using checks made out to "cash" and paying for such things as rent, gas, utilities, dinners out, Disneyland annual passes, pet care, etc….  In fact, between November 2012 and March 2104, Frank and Tara Jakubaitis received in excess of **$304,000.00** from WeCosign Services, Inc. in the form of payments made directly from WeCosign Services, Inc.

22.    One creditor, Carlos Padilla III, was undaunted in collecting the monies owed to him and he continued through the legal system to judgment against Frank Jakubaitis, WeCosign, Inc. and WeCosign Services, Inc.  Carlos Padilla III expects a judgment against Tara Jakubaitis shortly.

23.    Since Carlos Padilla III had obtained a judgment against Frank Jakubaitis, WeCosign, Inc. and WeCosign Services, Inc., Frank and Tara Jakubaitis could no longer use those entities to defraud the public.  As such, Frank and Tara Jakubaitis jettisoned the same for PNC National, Inc. Carlos Padilla III, undaunted, continued to pursue the various companies that Frank and Tara Jakubaitis would create.

24.    Anytime an entity would be deemed to have too much baggage because Carlos Padilla III was able to obtain relief against the same, the company would be dropped in favor of a new and clean entity, with complete disregard for corporate formalities.  Since the underlying business was an online business, it was simple for Frank and Tara Jakubaitis to create a new website, new emails, new bank accounts, new paypal accounts, etc…, and simply point the respective paypal accounts to new bank accounts.

25.    In fact, this practice continued: WeCosign, Inc. was dropped in favor WeCosign Services, Inc., which was dropped in favor of PNC National, Inc., which was dropped in favor of PNC Services, Inc., which was dropped in favor of Front Line Services, Inc., which was dropped for RPG123, which was dropped in favor of Cosigner One, Inc.  Now the new flavor is Capital Cosigners.

26.    Many of these entities were registered with various states, by various "individuals" who allegedly were independent of Frank and Tara Jakubaitis; however, many of the entities were not registered in any state.  And ultimately, each entity was controlled by Frank and Tara Jakubaitis.

27.    Throughout the pertinent times, Frank and Tara Jakubaitis would use their monies to purchase such things as an interest in several yachts and various cars including a Corvette, and various Mercedes Benzes.

28.    Furthermore, Plaintiff is informed and believe and thereupon allege, that both Frank and Tara Jakubaitis intentionally and fraudulently under reported their income in their various schedules in order to qualify for a Chapter 7 bankruptcy, if in reality they had disclosed their true income, they

1    would not qualify for a Chapter 7 and would instead have to file a Chapter 13 and repay a portion if

2    not all of their debts.

3        29.    Plaintiff is informed and believes and thereupon alleges that Frank and Tara Jakubaitis

4    went through great lengths to make it as difficult as possible for legitimate creditors to wade through

5    the quagmire they created in order to locate their assets.

6        30.    Plaintiff is informed and believes and thereupon alleges that Frank and Tara Jakubaitis

7    used and continued to use either straw-men or other forms and methods to conceal their assets,

8    including but not limited to using attorneys to hide their assets and purchasing assets in the name of

9    unrelated third parties in order to conceal the same from creditors.

10                            **CLAIMS FOR RELIEF**

11        **FIRST CAUSE OF ACTION PURSUANT TO 11 USC §542**

12                        **(Turnover of Property of the Estate)**

13        31.    Plaintiff re-alleges and fully incorporates all preceding paragraphs as if fully set forth

14    herein.

15        32.    Pursuant to 11 USC §524(a), the commencement of a bankruptcy case creates an estate.

16    That estate is comprised of all legal or equitable interest of the debtor in property wherever located and

17    by whomever held.  An equitable owner exists when the beneficial interest in an asset is vested in an

18    individual whom equity regards as the real owner, despite legal title being vested in another.

19        33.    Property ownership is not a single concrete entity but a bundle of rights and privileges.

20    Property ownership can be evidenced by, among other things, exercising dominion or control over the

21    property, possessing the property, and possessing the right to exclude from the property.  Even the

22    pruning away of some or a great many of these elements does not entirely destroy title.

23        34.    Under 11 USC §542(a), an entity that is in possession, custody, or control of Debtor is

24    property that the trustee is entitled to and must be delivered to the trustee.

25        35.    Plaintiff is informed and believes and thereupon alleges that Frank and Tara Jakubaitis

26    are the equitable and beneficial owners of such assets as cash, bank accounts, and, cars, among other

27    things that they failed to disclose in their bankruptcy documents and such assets are actually the

28

*Adversary Complaint*

-7-

1    property of the bankruptcy estates.  Plaintiff is informed and believes and thereupon alleges that Frank

2    and Tara Jakubaitis intentionally refused to disclose said assets on their respective schedules.

3        36.    As such, Plaintiff alleges that these assets are rightfully property of Frank and Tara

4    Jakubaitis's respective bankruptcy estate and should be turned over to the bankruptcy estate.

5                    **SECOND CAUSE OF ACTION PURSUANT TO 11 USC §544**

6                              **(Fraudulent Transfer of Assets)**

7        37.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

8        38.    Frank and Tara Jakuabitis have made various fraudulent transfers, without consideration

9    in order to hide their assets from legitimate creditors.

10       39.    This includes the transfer of assets from Frank and Tara Jakubaitis to Tara Pacific, Inc.

11       40.    Once Tara Pacific, Inc. could no longer be used as a shell to hide assets, Frank and Tara

12   Jakubaitis started using other entities, including but not limited to WeCosign Services, Inc. and other

13   entities currently unknown.  The transfers to Tara Pacific, Inc., WeCosign Services, Inc. and other

14   entities were without consideration and done with an intent to defraud creditors.

15       41.    For example, Frank and Tara Jakubaitis, refused to take salary from WeCosign

16   Services, Inc.  Nevertheless, within a 14 month period, Frank and Tara Jakubaitis withdrew money in

17   the form of checks made out to cash and other direct payments for such things as personal rent,

18   gasoline, car payments, pet care, Disneyland passes, etc... as described *supra*, totaling in excess of

19   **$300,000.00**.

20       42.    Frank Jakubaitis has admitted that the transfers made to Tara Pacific, Inc. were without

21   consideration.

22       43.    The refusal to take salary from WeCosign Services, Inc. is tantamount to a transfer of

23   assets to WeCosign Services, Inc. for no consideration.

24       44.    Plaintiff is informed and believes and thereupon alleges that Frank and Tara Jakubaitis

25   have used other entities, presently unknown, to further hide their assets from creditors, including this

26   Bankruptcy Court.

27       45.    As such, Plaintiff seeks a judgment against Frank and Tara Jakubaitis for any and all

28   fraudulently transferred assets that can be used for the benefit of the bankruptcy estate.

## THIRD CAUSE OF ACTION PURSUANT TO 11 USC §727(d)

### (Revocation of Discharge)

46.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

47.     Frank Jakubaitis obtained a discharge on January 21, 2014.  Tara Jakubaitis obtained a discharge on August 16, 2014.  Subsequent to discharge, Plaintiff determined that Tara Jakubaitis obtained a discharge through fraud, willful misrepresentations, and false oaths.  Had Plaintiff been aware of such misrepresentations, he could and would have objected to the discharge.

48.     Plaintiff alleges that each of Frank and Tara Jakubaitis under-reported their respective income so that they would qualify for a Chapter 7 bankruptcy as opposed to a Chapter 13 in which they would be forced to repay some or all of their debts.  Frank and Tara Jakubaitis each reported their collective income as approximately $6,000.00 per month.  However, Frank and Tara Jakubaitis continued to use various corporate entities as their personal "piggy bank" in that they would use the corporate entities to pay for their day to day expenses, such as payment of rent on their personal residence, payment for gas and other personal vehicle maintenance, paying for food and drinks, paying for Disneyland annual passes, and paying for pet care.  In reality, Frank and Tara Jakubaitis had an income closer to $15,000-$25,000 per month.  Plaintiff alleges that if Frank and Tara Jakubaitis had actually accounted for all of their income, they would not qualify for a Chapter 7 bankruptcy and would be forced into a Chapter 13 and a repayment plan, causing Frank and Tara Jakubaitis to repay some if not all of their debts.

49.     Furthermore, Plaintiff alleges that each of Frank and Tara Jakubaitis failed to report their interest in several assets, including but not limited to cash, bank accounts, vehicles, and failed to deliver or surrender said property to the Trustee for liquidation.

50.     Plaintiff alleges that Frank and Tara Jakubaitis fraudulently concealed their true income and their property in order to defraud creditors and improperly obtain a discharge.

51.     Plaintiff therefore seek a revocation of Tara Jakubaitis's discharge and declaring that all property of the Defendants be turned over to Plaintiff for liquidation for sale and to pay the legitimate creditors of the bankruptcy estate.

1

**PRAYER**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Frank and Tara Jakubaitis as follows:

1.    That all assets held by Frank and Tara Jakubaitis be turned over to the Plaintiff so that he may liquidate them for the benefit of creditors pursuant to 11 USC §§521, 541, 544, 547; 548; 549; and 550;

2.    That judgment be entered against Frank and Tara Jakubaitis for any and all fraudulently transferred assets to any entity.

3.    That Frank and Tara Jakubaitis's discharge be revoked pursuant to 11 USC §727(d)(1) based on their respective false oaths;

4.    That Frank and Tara Jakbuaitis's discharge be revoked pursuant to 11 USC §727(d)(2) based on their respective failure to disclose and schedule property of the estate and deliver property of the estate to the trustee;

5.    Reasonable attorneys' fees and costs incurred in bringing this adversary complaint; and,

6.    Any other relief that the Court may deem proper.

Dated: October 28, 2015

PACIFIC PREMIER LAW GROUP
/s/ Arash Shirdel, Esq.
Arash Shirdel, Esq. special litigation
counsel for Chapter 7 Trustee Richard
Marshack